FILED
COUNTY CLERK
DALLAS COUNTY, TEXAS

CAUSE NO. _CC-13-03871-B_  2013 JUL -1 PM 3: 49

| | | |
|---|---|---|
| GARY GRIFFITH AND | § | IN THE COUNTY COURT |
| STEPHANY GRIFFITH | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | AT LAW NO. _2_ |
| | § | |
| | § | |
| TODD AARON AND DAWN AARON | § | |
| | § | |
| Defendants | § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION; APPLICATION FOR TEMPORARY RESTRAINING ORDER; TEMPORARY AND PERMANENT INJUNCTIVE RELIEF; DECLARATORY RELIEF; AND APPLICATION FOR EXPEDITED DISCOVERY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs GARY GRIFFITH AND STEPHANY GRIFFITH, sometimes

hereinafter referred to as "Plaintiffs" and files this their Original Petition; Application For Temporary

Restraining Order and for Temporary and Permanent Injunctive Relief; Declaratory Relief; and

Application for Expedited Discovery complaining of Defendants, TODD AARON AND DAWN

AARON hereinafter sometimes referred to as "Defendants," and would respectfully show unto the

Court as follows:

### I.

### DISCOVERY CONTROL PLAN

1.     Discovery in this action is intended to be conducted under Level 2 of Rule 190.3

of the Texas Rules of Civil Procedure.

### II.

### NOTICE OF PRIOR RELATED CASE

EXHIBIT A

2.    Pursuant to Rule 1.06 Local Rules of the Civil Courts of Dallas County, Texas, Plaintiffs give notice of a related case styled Todd Aaron v. Dawn Aaron v. Gary Griffith, Cause No. CC-13-00854-E; Dallas County, Texas. A copy of the Agreed Judgment is attached hereto. The trial court denied Gary Griffith's Motion for New Trial. The case is final.

### III.

### CAUSES OF ACTION

3.    This action seeks equitable relief, declaratory judgment and attorney's fees, damages and taxable costs of court. Plaintiff also seeks an order for expedited discovery.

### IV.

### PARTIES AND THEIR RESIDENCES

4.    Plaintiff Gary Griffith is a resident of Wood County, Texas.

5.    Plaintiff Stephany Griffith is a resident of Wood County, Texas.

6.    Defendant Todd Aaron is an individual resident of Dallas County, Texas and may be served with process by personal service of citation with Original Petition attached at his place of residence located at 6215 Woodland, Dallas, Texas 75225.

7.    Defendant Dawn Aaron is an individual resident of Dallas County, Texas and may be served with process by personal service of citation with Original Petition attached at her place of residence located at 6215 Woodland, Dallas, Texas 75225.

### V.

### JURISDICTION AND VENUE

8.    Venue is proper in Dallas County because each of the Defendants are residents of Dallas County, Texas. Pursuant to §15.002(2), *Texas Civil Practices & Remedies Code*, venue is proper in Dallas County, Texas.

## VI.

## FACTUAL BACKGROUND

9.     This is a suit for, *inter alia*, equitable and injunctive relief to enjoin a sale of the Plaintiffs' personal property intended for sale and auction under an alleged landlord's lien. The lien is being enforced by the Defendants Todd Aaron and Dawn Aaron to satisfy an Agreed Judgment signed by Plaintiff Gary Griffith to Defendants on March 6, 2013. The Agreed Judgment has become final for all purposes.

10.     By way of background, on or about August 7, 2012, Plaintiff Gary Griffith and the Defendants signed a residential lease agreement for the premises located at 9422 Alva Court, Dallas, Dallas County, Texas 75220. [1] The lease term was from August 8, 2012 to October 8, 2013. The monthly rent was $8,000.00. Upon the signing of the lease in August, 2012, Plaintiff Gary Griffith paid in advance the sum of $16,000.00 for the first and last month's rent plus an $8,000.00 security deposit and a $1,000.00 pet deposit. A true and correct copy of the Gary Griffith - Aaron lease agreement is attached hereto as Exhibit 1.

11.     The term of the lease was 15 months. The Defendant and his spouse occupied the premises on or about August 8, 2012, and moved in to the home virtually all of their furniture, personal property and a lifetime of possessions. During the latter part of 2012, Plaintiff Gary Griffith became seriously ill, could not work, and as a result, Plaintiff Gary Griffith did not make the monthly rent payments under the lease for January and February, 2013. The Aarons declared a default under the lease.

---

[1] Plaintiff Gary Griffith's spouse Stephany Griffith is a party Plaintiff to this suit but did not execute the lease and is not a party to the lease.

12.     As a result of the declared default, on or about January 29, 2013, the Defendants filed a Justice Court lawsuit to evict the Plaintiff Gary Griffith and all occupants from the residence. On or about February 15, 2013, the Dallas County Justice Court, Precinct 3, Place 2 entered its Judgment awarding possession of the premises to the Aarons. A true and correct copy of the Justice Court judgment is attached hereto as Exhibit 2.

13.     On or about February 14, 2013, the Aaron's sued Plaintiff Gary Griffith in cause no. *CC-13-00854-E, the case styled Todd Aaron and Dawn Aaron v. Gary Griffith, in the Dallas County Court at Law No. 5* for all rentals owed under the lease agreement. Plaintiff Stephany Griffith was not a party to the lawsuit.

14.     On February 22, 2013, Plaintiff Gary Griffith executed a letter settlement agreement with the Aaron's counsel that set up installment payments for settling his outstanding rental payment account while allowing the Plaintiffs to remain in the premises. The agreement also required Griffith to waive his appellate rights on the eviction case; to make up the two (2) delinquent payments in March, 2013, to pay the Aaron's attorney the sum of $10,000 in attorneys fees, as well as to execute an Agreed Judgment. The letter settlement agreement was filed with the Court. A true and correct copy of the February 22, 2013, letter settlement agreement is attached hereto as Exhibit 3.  The Agreed Judgment was signed by the Court on March 6, 2013. A true and correct copy of the Agreed Judgment is attached hereto as Exhibit 4.

15.     The first installment of $9,000.00 under the letter settlement agreement was due on March 4, 2013. Gary Griffith was again unable to pay the first settlement payment installment.

16.     On or about March 6, 2013, the Aaron's obtained issuance of a writ of possession arising out of the previous February 5, 2013, Justice Court Judgment and evicted Griffith and his spouse from the premise, retaining most of Gary Griffith's personal possessions as well as those

PLAINTIFFS' ORIGINAL PETITION; APPLICATION FOR TEMPORARY RESTRAINING ORDER; TEMPORARY AND PERMANENT INJUNCTIVE RELIEF; DECLARATORY RELIEF; AND APPLICATION FOR EXPEDITED DISCOVERY
C:\Users\Paralegal\Documents\Files\GriffithMOP-TRO wpd

PAGE 4

belonging to his wife Stephany Griffith as her separate property. Additionally, some of the personal property and furnishings held by the Aaron's actually belong to innocent third parties and family members of Stephany Griffith, including her elderly mother and adult daughter.

17. Since the date the Griffith's were evicted from the premises, the Aaron's through their counsel, have continued to retain much of the Griffith's personal property in the residence under an alleged landlord's lien even though all rentals owed under the lease agreement have been liquidated and awarded in the Aaron-Gary Griffith Agreed Judgment.[2]

18. As shown by Exhibit E, Stephany Griffith has identified personal property belonging to her as her separate property and that of her family members and has provided it to the Aaron's attorney. Notwithstanding, the Defendants continue to retain certain items of Stephany Griffith's separate personal property and that of her family members which have an intrinsic value to them. The Defendants intend to sell same at a scheduled sale auction on Tuesday, July 2, 2013, at 10:00 a.m.

19. The Gary Griffith Aaron lease agreement provides in paragraph 23 as follows:

Residential Landlord's Lien: *Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property* that is in the Property and may seize such nonexistent property if Tenant fails to pay rent. Subchapter C. Chapter 54. Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or strong property seized property in accordance with the provisions of § 54.045. Property Code. (emphasis supplied)

20. Clearly, the lease contract provision that pertains to a landlord's lien does not create a lien on the property of non tenants such as Stephany Griffith. Additionally, any outstanding rentals have been reduced to a judgment.

---

[2] The Aaron's and their counsel have released to the Griffith's some of the personal property in the residence while retaining those items that they unilaterally have determined to be non-exempt property under §54.00 et, seq. *Tex. Prop. Code.*

PLAINTIFFS' ORIGINAL PETITION; APPLICATION FOR TEMPORARY RESTRAINING ORDER; TEMPORARY AND PERMANENT INJUNCTIVE RELIEF; DECLARATORY RELIEF; AND APPLICATION FOR EXPEDITED DISCOVERY
C:\Users\Paralegal\Documents\Files\Griffith\OP-TRO.wpd

PAGE 5

21.     As shown by the attached Exhibit F, the remainder of the Griffith's personal property is scheduled to be auctioned off at a sale at the 9422 Alva Court premises on Tuesday, July 2, 2013, at 10:00 a.m. Many of the items scheduled for sale include family heirlooms and other personal property that are of an intrinsic and very personal nature to the Plaintiffs. Some of the items include property of a very personal nature that belong to Stephany Griffith who never signed the subject residential lease or was subject to the Agreed Judgment entered on March 6, 2013, between Gary Griffith and the Aarons.

22.     The Defendants have refused to acknowledge to Plaintiff Gary Griffith that he is entitled to the exemptions that are provided to judgment debtors under *§42.002 of the Texas Property Code*. These exemptions include:

            (1) home furnishings and family heirlooms;

            (4) tools, equipment, books, and apparatus...used in a trade or profession;

            (7) two firearms;

            (8) athletic and sporting equipment;

Defendants are holding exempt property of Gary Griffith for sale on July 2, 2013.

Further, under *§54.042* Exemptions, the Defendants intend to auction off:

            (14) goods that the landlord or the landlord's agent knows are owned by a person

            other than the tenant or an occupant of the tenant.

23.     Based upon the information provided to Defendants through their counsel, the Defendants have reason to know that personal property identified by Plaintiff Stephany Griffith is exempt property that either belongs to her or her family members.

## VII.

## COUNT ONE

## DECLARATORY JUDGMENT

24.     Reurging the facts above as if expressly set forth herein, and pursuant to the Texas Declaratory Judgment Act, Plaintiffs seek a judicial declaration that the Plaintiffs' respective personal property is not subject to the Defendants' alleged landlord's lien arising out of the Alva Court residential lease executed by Plaintiff Gary Griffith.

25.     In the alternative, Stephany Griffith seeks a declaration that her separate property and that of her family members is not subject to A Defendants landlord's lien.

### VIII.

### COUNT TWO

### EQUITABLE RELIEF – TEMPORARY RESTRAINING ORDER; TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AGAINST DEFENDANTS

26.     Reurging the facts above as if expressly set forth herein, neither Plaintiff has any liability under the lease. As a non party to the lease, none of Stephany Griffith's separate personal property or that of her family members is liable for the judgment of her spouse Gary Griffith. By executing the Agreed Judgment, Gary Griffith owes the principal amount of the judgment but no longer has any liability under the lease. The Aaron Defendants, by accepting the executed Agreed Judgment have a judgment lien against the property of Gary Griffith, but no more. The Defendants have no right to conduct a sale of the Plaintiffs' personal property on July 2, 2013.

27.     Reurging paragraphs 1 through 20 above and as if further set forth herein and as a result of Defendants and the conduct of their agents actions and conduct in scheduling and intending to conduct an auction and a sale of the Plaintiffs' personal property at the sale scheduled for July 2, 2013, will cause irreparable harm to Plaintiffs. The Plaintiffs are being harmed and will continue to be harmed unless injunctive relief is granted to prevent further damage.

28.    Because of the very personal and intrinsic nature of the personal property subject to sale, Plaintiffs have no adequate remedy at law.

29.    Plaintiffs Gary Griffith and Stephany Griffith seek statutory equitable, temporary, and permanent injunctive relief enjoining the Defendants, their agents, servants, representatives, employees and attorney's from:

(1)    taking any actions to sell or dispose of the Plaintiffs' personal property under a landlord's lien at an auction or sale on July 2, 2013;

(2)    destroying, damaging, discarding or donating personal property belonging to Plaintiffs.

30.    The injuries to the Plaintiffs are therefore irreparable and Plaintiff has no adequate remedy at law. If the Temporary Restraining Order sought herein is not granted, it is likely that Defendants will continue to cause harm and damage to Plaintiff by causing the loss of the Plaintiff's personal property.

## IX.

## APPLICATION FOR EXPEDITED DISCOVERY

31.    Because of the urgency of the Plaintiffs' meritorious claims and Defendants continuing unlawful acts and conduct, and of the necessity to properly conduct discovery prior to hearing on temporary injunction, Plaintiffs' request that discovery, including depositions and document production, be authorized to be conducted and performed on an accelerated basis and with three (3) days notice to Defendants or their counsel.

## PRAYER

WHEREFORE, Plaintiffs request that:

1.    A temporary restraining order be issued without notice to Defendant Todd Aaron and Dawn Aaron restraining them, jointly and severally, or their agents, servants, representatives, and

employees and attorneys from engaging in the following acts:

    (1)    taking any actions to sell or dispose of the Plaintiffs' personal property under an alleged landlord's lien at an auction or sale on July 2, 2013;

    (2)    destroying, damaging, discarding, gifting or donating personal property belonging to Plaintiffs.

2.    Defendants Todd Aaron and Dawn Aaron be cited to appear and show cause and that on such hearing, a temporary injunction be issued, enjoining their agents, servants, attorneys, representatives and employees from the following:

    (1)    taking any actions to sell or dispose of the Plaintiffs' personal property under an alleged landlord's lien at an auction or sale on July 2, 2013;

    (2)    destroying, damaging, discarding, donating personal property belonging to Plaintiffs.

3.    A permanent injunction be ordered on final trial of this cause, enjoining Defendants Todd Aaron and Dawn Aaron, their agents, representatives, servants, and employees from the following:

    (1)    taking any actions to sell or dispose of the Plaintiffs' personal property under an alleged landlord's lien at an auction or sale on July 2, 2013;

    (2)    destroying, damaging, discarding, donating personal property belonging to Plaintiffs.

4.    That Plaintiff upon trial of the cause, recover its actual and punitive damages from Defendants as provided under Texas law.

5.    On final trial, Plaintiff receive all relief sought, including attorney's fees, and costs where allowed by law. The Plaintiff pleads for any and all further relief, at law, equitable of legal, as to which Plaintiff may be justly entitled.

Respectfully Submitted,

by: _____

MARTY D. PRICE
State Bar No. 16302300
2514 Boll Street
Dallas, Texas 75204
Telephone: (214) 871-1386
Fax: (214) 871-1389

ATTORNEY FOR GARY GRIFFITH AND
STEPHANY GRIFFITH

## CERTIFICATE OF CONFERENCE

I have communicated with the attorney Michael Noble and informed him that the Griffith

Plaintiffs are filing a petition seeking injunctive relief.

_____

MARTY D. PRICE

PLAINTIFFS' ORIGINAL PETITION; APPLICATION FOR TEMPORARY RESTRAINING ORDER; TEMPORARY AND
PERMANENT INJUNCTIVE RELIEF; DECLARATORY RELIEF; AND APPLICATION FOR EXPEDITED DISCOVERY
C:\Users\Paralegal\Documents\Files\Griffith\OP-TRO.wpd

PAGE 10

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

BEFORE ME, the undersigned Notary Public, on this day personally appeared GARY GRIFFITH, who being by me duly sworn on her oath deposed that he has read the above and foregoing Plaintiff's Original Petition; Application For Temporary Restraining Order; Temporary and Permanent Injunctive Relief; Declaratory Relief; and Application For Expedited Discovery and that all factual statements contained in ~~—~~ therein, are within his individual personal knowledge and are true and correct.

_____
GARY GRIFFITH

SIGNED AND SWORN to before me on this the 1st day of July, 2013, to certify which witness my hand and official seal.



CRYSTAL MERRITT
Notary Public
STATE OF TEXAS
My Comm. Exp. September 21 201?

_____
NOTARY PUBLIC - State of TEXAS

PLAINTIFFS' ORIGINAL PETITION; APPLICATION FOR TEMPORARY RESTRAINING ORDER; TEMPORARY AND
PERMANENT INJUNCTIVE RELIEF; DECLARATORY RELIEF; AND APPLICATION FOR EXPEDITED DISCOVERY
C:\Users\Paralegal\Documents\Files\Griffith\OP-TRO.wpd

PAGE 11

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

BEFORE ME, the undersigned Notary Public, on this day personally appeared STEPHANY GRIFFITH, who being by me duly sworn on her oath deposed that she has read the above and foregoing Plaintiff's Original Petition; Application For Temporary Restraining Order; Temporary and Permanent Injunctive Relief; Declaratory Relief; and Application For Expedited Discovery and that all factual statements contained in ~~therein~~ therein, are within her individual personal knowledge and are true and correct.

_____
STEPHANY GRIFFITH

SIGNED AND SWORN to before me on this the 1st day of July, 2013, to certify which witness my hand and official seal.


CRYSTAL MERRITT
Notary Public
STATE OF TEXAS
My Comm. Exp. September 21, 2015

_____
NOTARY PUBLIC - State of TEXAS

# EXHIBIT 1

# LEASE AGREEMENT

Exhibit

|



# TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED
©Texas Association of REALTORS®, Inc. 2012

1. **PARTIES:** The parties to this lease are:

the owner of the Property, Landlord,: _____ Todd Aaron, Dawn Aaron _____ ; and

Tenant(s): Gary Griffith _____

2. **PROPERTY:** Landlord leases to Tenant the following real property:

Address: 9422 Alva Ct., Dallas, Tx. 75220
legally described as: Preston Hollow Reb _____

in _____ Dallas _____ County, Texas, together with the following non-real-property
items: T.V. in family room by garage. Washer/Dryer, Table in window Dining.

The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

A. Primary Term: The primary term of this lease begins and ends as follows:

Commencement Date: ___ August 8, 2012 ___ Expiration Date: ___ October 8, 2013 ___

B. Delay of Occupancy: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination not less than: *(Check only one box.)*
☒ (1) 30 days before the Expiration Date.
☐ (2)_____ days before the Expiration Date.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides written notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*
☒ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.
☐ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

(TAR-2001) 1-1-12      Tenants: _____, _____, _____ & Landlord or Landlord's Representative: _____, _____      Page 1 of 15

Dave Perry-Miller & Associates 5950 Berkshire Lane Suite 100 Dallas, TX 75225
Phone: 214-797-1411      Fax: 214.739.8812      Ginger Levine                                              9422 Alva Ct.
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Residential Lease concerning: _____ 9422 Alva Ct. Dallas, Tx. 75220

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

5. **RENT:**

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ 8,000.00 _____ for each full month during this lease. The first full month's rent is due and payable not later than _____ August 8, 2012 _____ by (select one or more): ☒ cashier's check ☐ electronic payment ☒ money order ☒ personal check or ☒ other means acceptable to Landlord.
Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before:
☐ (1) the first day of each month during this lease.
☒ (2) 9th day of every month during this lease _____ .
Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. Prorated Rent: On or before _____ N/A _____ Tenant will pay Landlord $ N/A _____ as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.
  Name: Todd or Dawn Aaron _____
  Address: 6215 Woodland _____
      Dallas, Tx. 75225 _____
  **Notice: Place the Property address and Tenant's name on all payments.**

D. Method of Payment:
  (1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
  (2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
  (3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by (select one or more): ☒ cashier's check ☐ electronic payment ☐ money order ☒ personal check or ☒ other means acceptable to Landlord.
  (4) Landlord ☒ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
  (5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

6. **LATE CHARGES:**

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the ____ 9th ____ day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(TAR-2001) 1-1-12     Tenants: _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____  Page 2 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com       9422 Alva Ct.

Residential Lease concerning: _____ 9422 Alva Ct.
                                                        Dallas, Tx. 75220

(1) an initial late charge equal to *(check one box only)*: ☒ (a) $200.00 _____ ; or ☐ (b) _____ % of one month's rent; **and**

(2) additional late charges of $ 250.00 _____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.
**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least one full day after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED PAYMENT:** Tenant will pay Landlord $ 35.00 _____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. **PETS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:
(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;
(2) charge Tenant, as additional rent, an initial amount of $ N/A _____ and $ N/A _____ per day thereafter per pet for each day Tenant violates the pet restrictions;
(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and
(4) charge to Tenant the Landlord's cost to:
 (a) remove any unauthorized pet;
 (b) exterminate the Property for fleas and other insects;
 (c) clean and deodorize the Property's carpets and drapes; and
 (d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ 8,000.00 _____ by *(select one or more)*: ☒ cashier's check ☐ electronic payment ☐ money order ☐ personal check or ☒ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

(TAR-2001) 1-1-12    Tenants: _____ , _____ & Landlord or Landlord's Representative: _____    Page 3 of 15

Residential Lease concerning: _____   9422 Alva Ct.
                                                          Dallas, Tx  75220

B. __Interest:__ No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. __Refund:__ __Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated__ __to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants__ __named in this lease.__

**Notices about Security Deposits:**
**(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the deposit is security for unpaid rent.**
**(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**
**(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**
**(4) "Surrender" is defined in Paragraph 16 of this lease.**
**(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/ .**

D. __Deductions:__

(1) Landlord may deduct reasonable charges from the security deposit for:
   (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
   (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
   (c) unpaid or accelerated rent;
   (d) unpaid late charges;
   (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
   (f) unpaid pet charges;
   (g) replacing unreturned keys, garage door openers, security devices, or other components;
   (h) the removal of unauthorized locks or fixtures installed by Tenant;
   (i) Landlord's cost to access the Property if made inaccessible by Tenant;
   (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
   (k) packing, removing, and storing abandoned property;
   (l) removing abandoned or illegally parked vehicles;
   (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
   (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
   (o) mailing costs associated with sending notices to Tenant for any violations of this lease;
   (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
   (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; and
   (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

(TAR-2001) 1-1-12   Tenants: _CB_ ___, _____, _____ & Landlord or Landlord's Representative: _____   Page 4 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   9422 Alva Ct.

Residential Lease concerning: _____ 9422 Alva Ct.
Dallas, Tx. 75220

**11. UTILITIES:**

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: Yard and pool maintanance
_____

Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

**12. USE AND OCCUPANCY:**

A. Occupants: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (include names and ages of all occupants): Gary Griffith, Stephany Griffith
_____
_____

B. Phone Numbers and E-mail: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. HOA Rules: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. Guests: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ 30 _____ days without Landlord's written permission, whichever is less.

F. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

**13. PARKING RULES:** Tenant may not permit more than ____4____ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or

(TAR-2001) 1-1-12    Tenants: ___ , ___ , ___ & Landlord or Landlord's Representative: _____ Page 5 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          9422 Alva Ct.

Residential Lease concerning: _____ 9422 Alva Ct.
                                                         Dallas, Tx. 75220

adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

14. ACCESS BY LANDLORD:

A. Advertising: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. Access: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. Trip Charges: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ N/A _____

D. Keybox: A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.

   (1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
      (a) during the last _____ N/A _____ days of this lease or any renewal or extension; and
      (b) at any time Landlord lists the Property for sale with a Texas licensed broker.

   (2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ N/A _____ as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

   (3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge of $ N/A _____ .

   (4) Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.

(TAR-2001) 1-1-12    Tenants: _CAP_ ____ , ____ , ____ & Landlord or Landlord's Representative: _____    Page 6 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    9422 Alva Ct.

Residential Lease concerning: _____    9422 Alva Ct.
                                                            Dallas, Tx. 75220

**15. MOVE-IN CONDITION:**

    A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: New Carpet in master to be picked by tenant from sample provided by landlord.

    B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within _____10_____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

**16. MOVE-OUT:**

    A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

    B. Definitions:

        (1) "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

        (2) "Surrender" occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
            (a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
            (b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

        (3) "Abandonment" occurs when all of the following occur:
            (a) all occupants have vacated the Property, in Landlord's reasonable judgment;
            (b) Tenant is in breach of this lease by not timely paying rent; and
            (c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

    C. Personal Property Left After Move-Out:

        (1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
            (a) dispose of such personal property in the trash or a landfill;
            (b) give such personal property to a charitable organization; or
            (c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

        (2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

(TAR-2001) 1-1-12    Tenants: GAS _____ , _____ & Landlord or Landlord's Representative: _____ Page 7 of 15

Residential Lease concerning: _____ 9422 Alva Ct.
                                                         Dallas, TX  73220

## 17. PROPERTY MAINTENANCE:

A. <u>Tenant's General Responsibilities</u>: Tenant, at Tenant's expense, must:
   (1) keep the Property clean and sanitary;
   (2) promptly dispose of all garbage in appropriate receptacles;
   (3) supply and change heating and air conditioning filters at least once a month;
   (4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
   (5) maintain appropriate levels of necessary chemicals or matter in any water softener;
   (6) take action to promptly eliminate any dangerous condition on the Property;
   (7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
   (8) replace any lost or misplaced keys;
   (9) pay any periodic, preventive, or additional extermination costs desired by Tenant;
   (10) remove any standing water;
   (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
   (12) water the foundation of the Property at reasonable and appropriate times; and
   (13) promptly notify Landlord, in writing, of all needed repairs.

B. <u>Yard Maintenance</u>:

   (1) "Yard" means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

   (2) "Maintain the yard" means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

   (3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: <u>March through September 4 times a week /</u>
   <u>October through February 2 times a week</u>
   _____. Other than watering, the yard will be maintained as follows:

   ☒ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

   ☐ (b) Tenant, at Tenant's expense, will maintain the yard.

   ☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ _____

C. <u>Pool/Spa Maintenance</u>: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. <u>Prohibitions</u>: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may <u>not</u>:
   (1) remove any part of the Property or any of Landlord's personal property from the Property;
   (2) remove, change, add, or rekey any lock;

(TAR-2001) 1-1-12     Tenants: _____ _____ & Landlord or Landlord's Representative: _____ Page 8 of 15

Residential Lease concerning: _____   9422 Alva Ct.
                                                           Dallas, TX   75220

(3)  make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;

(4)  permit any water furniture on the Property;

(5)  install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;

(6)  alter, replace or remove flooring material, paint, or wallpaper;

(7)  install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;

(8)  keep or permit any hazardous material on the Property such as flammable or explosive materials;

(9)  keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;

(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or

(11) cause or allow any lien to be filed against any portion of the Property.

E.  **Failure to Maintain:** If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

F.  **Smoking:** Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☒ not permitted on the Property. If smoking is not permitted and does occur on the Property, Tenant will be in default and:

(1)  Landlord may exercise Landlord's remedies under Paragraph 27; and

(2)  Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

18. **REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A.  **Repair Requests:** All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call: Dawn  214-280-5222 . Ordinarily, a repair to the heating and air conditioning system is not an emergency.

B.  **NOTICE:** If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C.  **Completion of Repairs:**

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(TAR-2001) 1-1-12    Tenants: _____  & Landlord or Landlord's Representative: _____ Page 9 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                     9422 Alva Ct.

Residential Lease concerning: _____  9422 Alva Ct.
                                                        Dallas, Tx. 75220

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D. Payment of Repair Costs: Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18.

(1) Landlord will pay the entire cost to repair the following items not caused by Tenant or Tenant's negligence:
(a) heating and air conditioning systems;
(b) water heaters; or
(c) water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
(a) conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
(b) damage to doors, windows, and screens;
(c) damage from windows or doors left open;
(d) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
(e) items that are cosmetic in nature with no impact on the functionality or use of the item; and
(f) the following specific items or appliances: Washer/Dryer, Refrig, T.V. in family room _____

E. Trip Charges: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

F. Advance Payments and Reimbursements: Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:

A. Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.

20. SMOKE ALARMS: Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. Requests for additional installation, inspection, or repair of smoke alarms must be in writing. Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

(TAR-2001) 1-1-12   Tenants: _____  _____  & Landlord or Landlord's Representative: _____   Page 10 of 15

Residential Lease concerning: _____ 9422 Alva Ct.
Dallas, Tx. 75220

**21. LIABILITY:** Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets.

**22. HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**23. RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

**24. SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

**25. CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

**26. SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
Tenant is responsible for any service call resulting from a tripped breaker, jammed garbage disposal, or stopped toilets.
Landlord could possibly have scheduled maintenance on items or equipment in the property and will call tenant to schedule, or at times approved by tenant.
Tenant to have property professionally cleaned upon move-out.
Not withstanding anything to the contrary tenant and landlord agree that the 1st month rent of 8000.00, the security deposit 8000.00, pet deposit 1000.00 and the last month rent 8000.00 are payable to landlord by cashiers check upon exception of this lease. Total amount 25,000.

**27. DEFAULT:**

    A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

    B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
        (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;

(TAR-2001) 1-1-12    Tenants: _____ _____ _____ & Landlord or Landlord's Representative: _____   Page 11 of 15



Residential Lease concerning: _____ 9422 Alva Ct.
Dallas, Tx. 75220

(2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

(3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and

(4) Tenant will be liable for:
(a) any lost rent;
(b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;
(c) repairs to the Property for use beyond normal wear and tear;
(d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;
(e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and
(f) any other recovery to which Landlord may be entitled by law.

C. Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A. Special Statutory Rights Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses.

(1) Military: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

(2) Family Violence: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

(3) Sex Offenses: Tenant may have special statutory rights to terminate this lease in certain situations involving sexual assault or sexual abuse. For more information about the types of abuse and assault covered by this provision, Tenant is advised to review §92.0161, Property Code.

B. Assignment, Subletting and Replacement Tenants:

(1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

(2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(TAR-2001) 1-1-12    Tenants: 626 _____, _____, _____ & Landlord or Landlord's Representative: _____    Page 12 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    DSA    9422 Alva Ct.

Residential Lease concerning: _____ 9422 Alva Ct.
Dallas, Tx. 75220

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:
(a) if Tenant procures the assignee, subtenant, or replacement tenant:
☐ (i) $ _____
☒ (ii) _____100_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:
☐ (i) $ _____
☒ (ii) _____100_____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

| | |
|---|---|
| ☐ Addendum Regarding Lead-Based Paint | ☐ Agreement Between Brokers |
| ☒ Inventory & Condition Form | ☐ Landlord's Rules & Regulations |
| ☐ Landlord's Additional Parking Rules | ☐ Owners' Association Rules |
| ☒ Pet Agreement | ☐ Pool/Spa Maintenance Addendum |
| ☐ Protecting Your Home from Mold | ☐ Residential Lease Application |
| ☐ Agreement for Application Deposit & Hold | ☐ Residential Lease Guaranty |
| ☐ _____ | ☒ Second consent of Intermediary Agenc |
| ☐ _____ | ☐ _____ |

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to *(Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.):*

Tenant at the Property and a copy to:
Gary Griffith 214-849-0294
_____

E-mail: grgtx@me.com
Fax: _____

Landlord c/o:
Todd Aaron
Dawn Aaron dawnaaron@gmail.com
_____

E-mail: taaron@stevenstransport.com
Fax _____

(TAR-2001) 1-1-12    Tenants: GRG , _____ , _____ & Landlord or Landlord's Representative: _____ Page 13 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    9422 Alva Ct.



Residential Lease concerning: _____   9422 Alva Ct.
                                                          Dallas, Tx.  75220

## 33. AGREEMENT OF PARTIES:

A. Entire Agreement: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. Binding Effect: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. Joint and Several: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. Waiver: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. Severable Clauses: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

## 34. INFORMATION:

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information. )

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.
  Name: _____   Phone: _____
  Address: _____
  E-mail: _____

(TAR-2001) 1-1-12   Tenants: _GRC_,_____,_____, & Landlord or Landlord's Representative:____,_____   Page 14 of 15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        9422 Alva Ct.

Residential Lease concerning: _____ 9422 Alva Ct.
                                                Dallas, Tx. 75220

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☒ intends ☐ does not intend to purchase such insurance.

I. Landlord's broker, _Ginger Levine_____
   ☐ will ☒ will not act as the property manager for landlord.

J. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

| | | | | | |
|---|---|---|---|---|---|
| Landlord | 08/04/2012 | | Tenant | 08/04/2012 | |
| Todd Aaron | Date | | Gary Griffith | Date | |
| Landlord | 08/04/2012 | | Tenant | | Date |
| Dawn Aaron | Date | | | | |

Or signed for Landlord under written property management agreement or power of attorney:

| | | | | |
|---|---|---|---|---|
| By: | | | Tenant | Date |
| | Date | | | |

Ginger D. Levine
Broker's Associate's Printed Name

Ginger D. Levine                    0257740
Broker's Printed Name               License No.

Dave Perry Miller & Assoc.
Firm Name



## SMOKE DETECTOR
## CARBON MONOXIDE DETECTOR
### ADDENDUM TO LEASE AGREEMENT

Tenant and Landlord mutually agree as follows:

1. Tenant is leasing from Landlord the premises located at: _9422 Aiva Ct. 75220_

2. This agreement is an addendum and part of the lease agreement and/or any lease renewals or extensions relating to the premises.

3. The premises includes one or more smoke detectors.

4. It is agreed that Tenant will test the smoke detector within one hour after occupancy and inform Landlord immediately if detector(s) is not working properly. Tenant understands that in order to test the smoke detector, it is necessary to push the "push to test" button on the detector for about five seconds. To be operating properly, the alarm will sound when the button is pushed.

5. It is further agreed that the Tenant will be responsible for testing the smoke detector(s) at least once every week. If there is no sound after performing the test, Tenant agrees to inform Landlord immediately in writing of any deficiencies.

6. Tenant understands that if said smoke detector(s) is battery operated, it shall be the Tenant's responsibility to insure that the battery is in operating condition at all times. If, after replacing the battery, smoke detector(s) will not operate, Tenant must inform Landlord immediately in writing.

7. It is further understood that the air conditioning filter must be changed or washed every 30 days. If Tenant fails to do this (as proven through Landlord inspection), they agree to reimburse Landlord for parts and labor to change the air conditioning filter.

8. The same conditions in paragraph 7 apply if Tenant is responsible for lawncare. Drive by inspections will be done at reasonable intervals in the lawn cutting season. Maintenance of shrubs and watering of lawn and all other landscaping are also Tenant responsibilities. Foundation soaking 12" away from the foundation must be done every week in summer.

9. If the property contains gas, Tenant is aware that carbon monoxide is a bi-product of gas. It is colorless, odorless, and very lethal. Landlord strongly recommends the installation of a carbon monoxide detector (which plugs into an electric wall socket) and Tenant agrees to hold harmless Landlord and Landlord's representative if carbon monoxide poisoning occurs.

| TENANT | DATE | LANDLORD | DATE |
|--------|------|----------|------|
| | | | 8/10/12 |
| TENANT | DATE | LANDLORD | DATE |
| | 08/07/2012 | | 8/10/12 |

Smoke/Carbon Monoxide Detector Addendum
Ebby Halliday Real Estate, Inc.
(3/01)
Ebby Halliday, REALTORS 4455 Sigma Rd Dallas, TX 75244          Phone: 972-980-6610     Fax:
Debbie Watros                                                                                Leasing Forms

Produced with ZipForm3 by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com



**DAVE PERRY-MILLER & ASSOCIATES**
*Marketing Properties of Quality and Character*

### SECOND CONSENT TO INTERMEDIARY AGENCY STATUS (LEASE)

*For use with "In Company" transactions by Ebby Halliday, REALTORS® or*
*Dave Perry-Miller & Associates*
*Use this form only if written listing and buyer representation agreements were signed authorizing an intermediary relationship.*

LANDLORD: Todd Aaron, Dawn Aaron

TENANT: Gary Griffith

PROPERTY (Address): 9422 Alva Ct., Dallas, Tx. 75220

BROKER: Ebby Halliday Real Estate, Inc. dba Ebby Halliday, REALTORS®, Dave Perry-Miller & Associates

Tenant and Landlord have either entered into a Contract for the lease of the Property or are contemplating entering into such a contract. Tenant and Landlord hereby agree and consent that Broker shall be authorized to act as an Intermediary and that Broker (1) shall treat all parties honestly; (2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner; (3) may not disclose that the Tenant will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the Tenant; and (4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property. Tenant and Landlord further agree and consent as follows:

*Initial As Applicable*

A. *Intermediary Status With Two Appointed Licensees for Tenant and Landlord*: Broker shall appoint two of Broker's sales associates to act as Appointed Licensees to work with, carry out instructions and render professional advice and opinions to the party for whom they have been appointed. The Principal Appointed Licensees are as follows:

PRINCIPAL APPOINTED LICENSEES:  For Landlord: _____
                                               Name of Sales Associate
*All other licensees of Broker are appointed to communicate*  For Tenant: _____
*with and carry out instructions of the parties*                    Name of Sales Associate

B. *Intermediary Status With Only One Licensee Working with Tenant and Landlord*: Tenant and Landlord both wish to work with one sales associate of Broker as an Intermediary Representative who will not render professional advice or opinions to either party so as to remain fair and impartial to both parties, however may provide information and assistance. The Intermediary Representative in the transaction is stated as follows:

INTERMEDIARY REPRESENTATIVE:  For Parties: Ginger D. Levine
*All other sales associates of Broker who may*               Name of Sales Associate
*assist the parties in the transaction will also be*
*representatives.*

Landlord and Tenant shall pay broker the professional service fee in accordance with the previously executed listing agreement and tenant representative agreement.

*(If applicable)*
A. Broker discloses to the parties the existence of the following special relationship between the sales associates and one of the parties:

Todd Aaron                      is related to           Ginger D. Levine              as
Name - Tenant/Landlord                                          Name - Sales Associate
follows: (specify relationship): Cousin

B. Broker has a long standing or active client relationship with: ☐ Tenant  ☒ Landlord

Tenant Gary Griffith _____  08/07/2012 _____  Landlord Todd Aaron _____ 8/10/__
                                Date                                                                  Date

Tenant _____  _____  Landlord Dawn Aaron _____ 8/10/__
                                Date                                                                  Date

Second Consent to Agency Status - page 1 of 1
©Ebby Halliday Real Estate, Inc. (5/03)
Dave Perry-Miller & Associates 5950 Berkshire Lane Suite 100 Dallas, TX 75225                    Phone: 214-707-1611          Fax 214.739.9812          9422 Alva Ct.
Ginger Levine                                   Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

## The Agency Policy of Ebby Halliday Real Estate, Inc.

The policy of Ebby Halliday Real Estate, Inc. d/b/a Ebby Halliday, REALTORS® and Dave Perry-Miller & Associates is to offer the broadest possible range of services and choices to the company's clients and to provide information to our clients to allow them to make an informed decision about the agency relationship they wish to have with the company and our sales associates.

*Exclusive Agency.* With exclusive agency Ebby Halliday Real Estate, Inc. will continue to offer the full range of broker services it has offered for over 50 years.

Ebby Halliday Real Estate, Inc. will be the exclusive agent for the buyer when showing builders' properties when such properties are not listed by Ebby Halliday Real Estate, Inc.

*Intermediary Status.* For those transactions in which both the seller and buyer wish to use the services of Ebby Halliday Real Estate, Inc. then the company will act as an "Intermediary". As an intermediary the company will work with and carry out instructions of the parties and will (1) treat both the buyer and seller honestly, (2) will not disclose that the seller will accept a price less than the asking price unless authorized in writing to do so by the seller, (3) will not disclose that the buyer will pay a price greater then the price submitted in a written offer unless authorized in writing to do so by the buyer and (4) will not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by law. If the parties wish to use the services of two sales associates of the company in the same transaction, then the company will appoint each of the associates as an "Appointed Licensee" who may render their professional advice and opinions to the parties for whom they have been appointed. If both the seller and buyer wish to use the services of the same sales associate of Ebby Halliday Real Estate, Inc., the company will act as an intermediary and the sales associate will be the "Intermediary Representative" in the transaction. The Intermediary Representative may provide information and assistance, but will not render professional advice or opinions to either party so as to remain fair and impartial to both parties in the transaction. If, during such a transaction, either party wishes to have a separate sales associate work with them, then the Broker will appoint a separate associate.

Does acting as an intermediary present a conflict? Well, yes it can, and for that reason Ebby Halliday Real Estate, Inc. will only act as an intermediary with the express written consent of our clients. Why would the company want to act as an intermediary? Because it is a benefit to our buyers to consider the large inventory of homes offered for sale by Ebby Halliday Real Estate, Inc. and it is a benefit to our sellers to allow the many buyers who are represented by the company to consider their property for purchase. Moreover, it is a benefit to all our clients to allow them to choose for themselves which real estate agent they wish to work with and to decide for themselves what agency relationship they wish to have with their broker. The policy of Ebby Halliday Real Estate, Inc. provides our clients with the greatest range of choices. Should an intermediary relationship frighten our clients? No, because ultimately our clients, as they always have, will make the decisions affecting the sale or purchase of their property.

This policy is designed to allow clients of Ebby Halliday Real Estate, Inc. the freedom to choose how their broker will represent them in their real estate transaction.

## AGENCY DISCLOSURE

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

NAME _____  DATE 08/02/12

NAME _____  DATE 8/10/12

Page 3 of 4
©Ebby Halliday Real Estate, Inc.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

9422 Atra Ct.



TEXAS ASSOCIATION OF REALTORS®
## PET AGREEMENT
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2003

**ADDENDUM TO RESIDENTIAL LEASE CONCERNING THE PROPERTY AT** 9422 Alva Ct., Dallas, Tx. 75220

**A. PET AUTHORIZATION AND PET DESCRIPTION:**

(1) Tenant may not keep any pet on the Property unless specifically authorized by this agreement. "Pet" includes any animal, whether mammal, reptile, bird, fish, rodent, or insect.

(2) Tenant may keep the following pet(s) on the Property until the above-referenced lease ends.

Type: Dog    Breed: Brussels Griffon    Name: Lulu
Color: Brown    Weight: 6 lbs    Age: 10    Gender: Female
Neutered? ☒ yes ☐ no    Declawed? ☐ yes ☒ no    Rabies Shots Current? ☒ yes ☐ no

Type: Dog    Breed: Brussels Griffon    Name: Cheeky
Color: Brown    Weight: 5 lbs    Age: 9    Gender: Female
Neutered? ☐ yes ☐ no    Declawed? ☐ yes ☒ no    Rabies Shots Current? ☒ yes ☐ no

**B. CONSIDERATION:** In consideration for Landlord's authorization for Tenant to keep the pet(s) described in Paragraph A on the Property, the parties agree to the following. *(Check any one or any combination of the following.)*

☒ (1) On or before the date Tenant moves into the Property, Tenant will pay Landlord a pet deposit of $ 1,000.00 . The pet deposit is an increase in the security deposit in the lease and is made part of the security deposit for all purposes. This increase in the security deposit is not refundable before the lease ends, even if the pet is removed. Any refund of the security deposit, including this increase, is governed by the terms of the lease.

☐ (2) The monthly rent in the lease is increased to $ _____ .

☐ (3) Tenant will, upon execution of this agreement, pay Landlord $ _____ as a one-time, non-refundable payment.

**C. PET RULES: Tenant must:**
(1) take all reasonable action to insure that any pet does not violate the rights of other persons;
(2) comply with all applicable statutes, ordinances, restrictions, owners' association rules, and other enforceable regulations regarding any pet;
(3) keep the rabies shots of any pet current;
(4) confine any pet that is a dog or cat, when outside, by fences or on leashes under Tenant's control;
(5) confine any pet other than a dog or cat in appropriate cages at all times;
(6) promptly remove any pet waste from the Property, including all living areas, garages, storage areas, yards, porches, patios, courtyards, and decks; and
(7) promptly remove from the Property any offspring of any pet.

**D. ACCESS:** Tenant must remove or confine any pet at any time that the pet is likely to limit or prohibit Landlord or other persons access to Property as permitted by the lease.

(TAR-2004) 10-14-03    Initialed for Identification by Tenants: GnG , _____ and Landlord: _____ , _____    Page 1 of 2

Dave Perry-Miller & Associates 5950 Berkshire Lane Suite 100 Dallas, TX 75225
Phone: 214-797-1411    Fax: 214.739.8812    Ginger Levine
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com    9422 Alva Ct.

Pet Agreement concerning _____   9422 Alva Ct.
                                                    Dallas, Tx. 75220

**E. DISCLOSURE CONCERNING PETS:**

(1) Is Tenant aware of whether any of the pets described under this addendum has ever bitten or injured another person?
If yes, explain: _____   ☐ Yes ☒ No

_____

(2) Is Tenant aware of whether any of the pets described under this addendum has any propensity or predisposition to bite or injure someone?
If yes, explain: _____   ☐ Yes ☒ No

_____

**F. TENANT'S LIABILITY:**

(1) Tenant is responsible and liable for:
  (a) any damage to the Property or any item in the Property caused by any pet;
  (b) any personal injuries to any person caused by any pet; and
  (c) any damage to any person's property caused by any pet.
(2) Tenant will pay all reasonable costs that are necessary to clean, deodorize, deflea, or repair any part of the Property, including but not limited to the carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, sod, yard, fences, or landscaping.

**G. INDEMNIFICATION:** Tenant will protect, defend, indemnify, and hold Landlord, Landlord's property manager, and Landlord's agents harmless from any damages, costs, attorney's fees, and expenses that are caused by the act of any pet or Tenant.

**H. DEFAULT:** If Tenant breaches any provision in this pet agreement, Landlord may exercise all or any of the remedies described under Paragraph 9B of the lease.

**I. SPECIAL PROVISIONS:**

Landlord Todd Aaron _____  Date _____   Tenant Gary Griffith _____  08/23/2012 Date

Landlord Dawn Aaron _____  8/10/12 Date   Tenant _____  Date

Or signed for Landlord under written property management
agreement or power of attorney:                        Tenant _____  Date

By: _____

Printed Name: _____                          Tenant _____  Date

Firm Name: _____

(TAR-2004) 10-14-03                                     Page 2 of 2

# EXHIBIT 2

# JUSTICE COURT JUDGMENT

Exhibit

2

CAUSE NO. JE-13-00432-N



**TODD AARON
AND DAWN AARON
Plaintiffs**

vs.

  **GARY GRIFFITH
Defendant**

**IN THE JUSTICE COURT**

**PRECINCT 3, PLACE 2**

**DALLAS COUNTY, TEXAS**

### JUDGMENT

On February 15, 2013, came on to be heard the above-entitled and numbered cause of action. TODD AARON AND DAWN AARON, Plaintiffs, appeared by their agent and GARY GRIFFITH, Defendant, did not appear in person.

Neither party having demanded a jury, all matters in controversy, of fact and of law, were submitted to the Court sitting without a jury. The pleadings, evidence, testimony of the parties present having been heard by the Court; the Court believes that the Plaintiff proved the allegations of the petition herein, and finds:

The Plaintiff is entitled to possession of the premises described in Plaintiffs complaint.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff, do have and recover of Defendant possession of the premises located at 9422 Alva Court in Dallas, Texas, for which let Writ of Possession issue on or after February 21, 2013.

IT IS FURTHER ORDERED ADJUDGED AND DECREED by the Court that the amount of appeal bond is set at $ _1,000.00_. All other relief not expressly granted herein is denied.

Signed this date, February 15, 2013.

Judge Steven L. Seider
Justice of the Peace
Precinct 3, Place 2
Dallas County, Texas

GARY GRIFFITH
9422 Alva Court
Dallas, Texas 75220

JE13-00432-N

# EXHIBIT 3

## February 22, 2013
## SETTLEMENT LETTER

*Exhibit*

3

MICHAEL J. NOBLE
*Attorney at Law*

FILED
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY, TEXAS

13 MAR -7 PM 12: 38

February 22, 2013

Mr. Gary Griffith
9422 Alva Court
Dallas, Texas 75220

Re:     *Todd Aaron and Dawn Aaron v. Gary Griffith*, Cause No. JE-13-00432-N,
        Justice Court, Precinct 3, Place 3, Dallas County, Texas.

        *Todd Aaron and Dawn Aaron v. Gary Griffith*, Cause No. CC-13-00854-
        E, County Court at Law No. 5, Dallas County, Texas.

Dear Gary,

        This letter confirms our agreement with regard to the above-referenced lawsuit.  You
agree to make the following payments to Todd and Dawn Aaron.  All payments must be received
by the Aaron by the deadline shown:

|                       |                                                        |
|-----------------------|--------------------------------------------------------|
| March 4, 2013:        | $9,000 (January rent + $1,000 in outstanding late fees) |
| March 8, 2013:        | $9,000 (March Rent + $1,000 in outstanding late fees)   |
| March 29, 2013:       | $9,000 (February rent + $1,000 in outstanding late fees)|
| April 9, 2013:        | $9,000 (rent + $1,000 in outstanding late fees)         |
| May 9, 2013:          | $9,000 (rent + $1,000 in outstanding late fees)         |
| June 9, 2013:         | $9,000 (rent + $1,000 in outstanding late fees)         |
| July 9, 2013:         | $9,000 (rent + $1,000 in outstanding late fees)         |
| August 9, 2013:       | $9,000 (rent + $1,000 in outstanding late fees)         |
| September 9, 2013:    | $9,000 (rent + $1,000 in outstanding late fees)         |
| October 9, 2013:[1]   | $1,000 (rent + $1,000 in outstanding late fees)         |

        The Aarons will cease all litigation and collection efforts and will agree to allow you
remain in the Alva Court house under the terms and conditions of the Residential Lease
Agreement so long as all payments are made according to this schedule.

        You will agree not to appeal the judgment entered by the Justice Court and will agree to
enter a stipulated Judgment for all outstanding rent payments as of the date of this letter, plus all
late fees accrued as of the date of this letter, plus all court costs in both lawsuit filed, plus
attorney's fees in the amount of $10,000. No action or collection efforts of any kind or character
will be taken with the stipulated Judgment, including but not limited to filing an abstract of
judgment or notifying a credit bureau, unless and until you fail to make timely a payment

---

[1]  Griffith paid the first and last month rent at the time of execution of the lease. Therefore, the Aarons will apply
the funds previously paid to this monthly rental payment.

P.O. Box 279010 • Dallas, Texas 75227-9610 • (972) 216-9000




Mr. Gary Griffith
February 22, 2013
Page 2

according to the foregoing schedule. If all payments are timely made, the Aarons will execute an appropriate Release of Judgment. In the event of a default, you will be provided credit for all payments made up to the time of default.

    If this is agreeable, please sign and date this letter below and return a signed copy to me. I will prepare and forward you the stipulated Judgment along with an Agreed Motion for Entry of Judgment to sign. I will then file these pleading with the Court.

    With kindest regards,

                     Sincerely,

                     Michael Noble

Signed on this the 25TH day of February, 2013.

Gary Griffith

# EXHIBIT 4

# AGREED JUDGMENT

**Exhibit**

4

Cause No. CC-13-00854-E

| | | |
|---|---|---|
| TODD AARON and DAWN AARON, | § | IN THE COUNTY COURT |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | AT LAW NO. 5 |
| | § | |
| GARY GRIFFITH, | § | |
| *Defendant.* | § | DALLAS COUNTY, TEXAS |

## AGREED JUDGMENT

Plaintiffs and Defendant have submitted this Agreed Judgment in connection with a settlement reached in the above-referenced lawsuit. The Court has considered the pleadings and official records on file in this cause, as well as the agreement of the parties evidenced by their signatures below. The Court finds that judgment should be rendered for Plaintiff.

It is accordingly ADJUDGED that TODD AARON AND DAWN AARON, Plaintiffs, recover from GARY GRIFFITH, Defendant, judgment for:

1. $82,000.00 in outstanding rent and late fees;

2. Court costs in the amount of 427.00;

3. $10,000.00 in reasonable and necessary attorney's fees;

4. Post-judgment interest at the rate of eighteen percent (18%) per year from the date of this Judgment until paid.

It is ORDERED that Plaintiff shall have all writs of execution and other process necessary to enforce this judgment.

All relief not expressly granted herein is denied.

This judgment finally disposes of all parties and all claims and is appealable.

AGREED JUDGMENT

Page 1

SIGNED on the 6 day of March , 2013.

_____
JUDGE PRESIDING

AGREED & ENTRY REQUESTED:

_____
MICHAEL NOBLE
*Attorney for Plaintiffs*

_____
GARY GRIFFITH
*Pro Se Defendant.*

AGREED JUDGMENT

Page 2

# EXHIBIT 5

# EXEMPT PROPERTY OF
# PLAINTIFFS AND THIRD PARTIES

Exhibit

5

## AFFIDAVIT OF STEPHANY GRIFFITH

I declare that to the best of my knowledge and belief the information herein is true, complete and correct.

My name is Stephany Griffith.

Edith Hughes is my mother.

In late July of 2012 I, Stephany Griffith, removed from my mother's storage room several items for what was to be temporary use at a lease property. I informed my mother these items would be returned to her by November of 2013. This has been a common practice of my sister and me for many years.

The following is what I know to be a complete list of items loaned to me.

1. Blue and white chinese fish bowl with metal stand
2. Multicolored large chinese fish bowl with metal stand
3. Two blue and white chinese ginger jars with metal stands and tops
4. Small chinese blue and white jar with metal top
5. Two brown and white chinese styled vases with matching tops
6. Two multicolored tall chinese vases with metal stands
7. Two carved wood wall sconces
8. Small chinese styled brick colored stool
9. Two leather and wood occasional arm chairs
10. Ten framed family crests
11. Small faux tortoise topped occasional table
12. Rectangular brick colored wool rug
13. Three wool runners of similar color
14. Two large faux painted wall sconces topped with wood shelves

_____          6·18·13
Stephany Griffith                         Date


_____
NOTARY PUBLIC

SUE HORCHEM
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 10-31-2016

**Items To Be Moved From 9422 Alva CT**

-All personal items belonging to Stephany Griffith as shown on her list

-All personal item belonging to Erin Abernathy, on list previously provided

-All personal items belonging to Edith Hughes, on list previously provided

-All personal items of Gary Griffith, including but not limited to:

> *Clothing
> *All Sporting goods
> *Business personal property from my home office
> *Files, papers and records
> *Cell phones, PDAs, data disks, SanDisks, data cards, thumb drives, tablets, etc., all of which contain personal confidential information.
> *All snapshots, family pictures, family heirlooms,
> *All packed wardrobe boxes, books and records
> *Two guns from the gun closet
> *All awards and personal memorabilia

-All outdoor furniture and equipment, including outdoor seating tables, bar stools and bar table, sofas, chairs, coffee tables, mosquito mister, ball machine, BBQ grill and dog houses and enclosures

-All beds and bedding

-Dining room table and chairs

-All kitchen equipment not previously picked up

-All medicines and medical supplies

-All decorator provided items not yet paid for

-Sofa, and two living room chairs

-UVerse cable boxes belonging to ATT

-All FedEx, UPS and any other mail or packages belonging to the Griffiths delivered to 9422, and not yet forwarded to them.

-Any other personal property that is exempt and cannot be recalled from memory

To whom it may concern: The items listed below currently in possession of my daughter belong to me.

1. Blue and white fish bowl with metal stand
2. Multicolored Chinese fish bowl with metal stand
3. Two Chinese blue ginger jars with metal stands and tops.
4. Chinese blue jar with matching top
5. Two brown and white vases with wood wall sconces
6. Two multicolored vases on metal stands
7. Two French styled leather and wood arm chairs
8. Small brick colored stool
9. Ten framed family crests
10. Small faux tortoise top occasional table
11. Brick colored wool rug @ 8' x 10'
12. Three runners of similar color
13. Two large faux painted wall sconces topped with wood shelves.

These items are reproductions and of minimal monetary value

Edith Beaudreaux Hughes

1. Entryway french bombay style commode – *PURCHASED & SHIPPED FROM CANADA LATE 80's*
2. French style buffet in dining room – *DESIGN DISTRIC · 1990's (EARLY)*
3. Large gold framed mirror in great room – *SHIPPED FROM NEW YORK · LATE 80's*
4. Large black and gold framed mirror in great room – *DESIGN DISTRIC DALLAS EARLY 90's*
5. Glass top gold metal base cocktail table in great room – *DESIGN DISTRIC DALLAS " "*
6. Floral rug in great room – *PURCHASED DESIGN DISTRIC DALLAS 1995*
7. Small bronze boy figurine & two glass paperweights in great room – *BIRTHDAY GIFTS FROM*
8. Round glass top and wood base table in great room – *DESIGN DISTRIC BART SHOENEMAN 1985   DALLAS EARLY 80's*
9. Brass candle holders in great room ⎤ *GIFTS FROM MOM 1970's*
10. Wood candle holders in great room ⎦
11. Two wingback chairs in great room – *DALLAS DESIGN DISTRIC · 1990 – RECOVERED*
12. Small decorative garden seat in great room – *GIFT FROM MOM*
13. Three copper pots in great room – *PURCHASED & SHIPPED FROM SANTA FE 1994*
14. Jacques Lamy print in bar area – *DESIGN DISTRIC · DALLAS EARLY 90's*
15. Foo dog lamp in bar area – *WORLD TRADE CENTER · 1983*
16. Calla Lilly painting in family room – *PURCHASED AND SHIPPED FROM SANTA FE 1994*
17. Two leather chairs w/ottoman in family room *PURCHASED LATE 80's*
18. Copper pot in family room – *SANTA FE · 1994*
19. Two small matching lamps in family room – *SANTA FE · 1994*
20. Decorative "monkey and bird" lamp in family room
21. Three tiered wood end table in family room
22. Framed flower print in family room
23. Elephant based floor lamp in family room
24. Two blue fabric occasional chairs in family room – *DESIGN DISTRIC LATE 8's RECOVERED 1998*
25. Flower print in kitchen area
26. Leather framed mirror in kitchen area – *SANTA FE · 1994*
27. Three bar stools in kitchen area ⎤ *DESIGN DISTRIC DALLAS MID 90's*
28. Two bar stools in bar area ⎦
29. Matching knoll white knoll sofas in mbr sitting room – *DESIGN DISTRIC DALLAS LATE 80's*
30. Oriental style buffet in mbr sitting room – *GIFT FROM SOL FREID · 1985*
31. Armoire in mbr sitting room
32. Black bombay style marbled top chest in mbr
33. ~~Costume and silver jewelry in her mbr bathroom cabinet~~
34. Brown stool in her mbr bathroom
35. Three architectural prints on stairway
36. Two English hunt scene prints in upstairs hallway – *PURCHASED IN LONDON ENGLAND @ 1980*
37. Yellow occasional chair in guest bedroom
38. Matching three drawer bedside chests in guest bedroom – *DESIGN DISTRIC 1990's*
39. Numerous boxed items in storage area of family room
40. Numerous boxed items in upstairs workout room

*MARTY, ALL ITEMS ON THIS LIST WERE IN MY HOME ON WINDSOR PARKWAY. I LIVED THERE FROM THE LATE 80's TILL 1995. NOTATIONS ARE OBVIOUSLY FROM MEMORY. THOSE LEFT BLANK – I JUST DON'T REMEMBER WHEN OR WHERE THEY WERE ACQUIRED BUT JUST THAT THEY WERE IN THE HOME ON WINDSOR PARKWAY*

Mom - these are the only
things I can remember
leaving with Beau and the

• 2 televisions - 1 in the kitchen
and the other one that was
never hooked up that was
meant for the guest room - I
think its in the little wine
room

• The painting of me swimming
that Beau + Paul and Jeff

• My gold trunk that was in

• My metal rooster that's

• _____ my stuff that is
boxed up like high school
stuff.

  Thanks!

# EXHIBIT 6

## July 22, 2013
## Notice of Sale Letter

Exhibit

6

**MICHAEL J. NOBLE**
*Attorney at Law*

May 31, 2013

Mr. Marty D. Price                                    *Via CMRRR 70090820000124103652*
2514 Boll Street                                          *& First Class Mail*
Dallas, Texas 75204

Re:   *Todd Aaron and Dawn Aaron v. Gary Griffith,* Cause No. CC-13-00854-
      E, County Court at Law No. 5, Dallas County, Texas.

Dear Marty:

    Todd and Dawn Aaron are giving notice to your clients that all property subject to their
Residential Landlord's Lien and all remaining property that has been left in the Alva Court
residence will be sold on <u>Tuesday, July 2, 2013 at 10:00 a.m.</u>

    In accordance with § 54.045(b) of the property code, Todd and Dawn Aaron provide the
following information with regard to the sale:

    (1)    The sale will take place at 9422 Alva Court, Dallas, Texas 75220.

    (2)    The following amounts are owed by Gary Griffith to the Aarons:

        (a)    $92,427.00, which is the principal amount owed under the Judgment;
        (b)    $1,545.64, which is the post-judgment interest owed as of the date of this
             Notice (interest continues to accrue at the rate of $17.9726 per day);
        (c)    $4,500.00, which is the storage fees which have accrued as of the date of
             this notice (storage charges continue to accrue as the rate of $1,500.00 per
             month);
        (d)    $3,500.00, which represents the additional costs incurred in connection
             with the sale.

    (3)    You may contact the following person regarding the sale, the amount owed and
        the right of Mr. Griffith to redeem the property in accordance with Tex. Prop.
        Code § 54.045(c): Michael Noble, 9757 Military Parkway, Dallas, Texas 75227,
        (214) 647-3752

    On the day of the sale, the property shall be sold to the highest cash bidder. Proceeds
from the sale shall be applied first to delinquent rents and then to reasonable packing, moving,
storage and sale costs.

    Any proceeds remaining after payment of the amounts authorized in Tex. Prop. Code §
54.045(c) shall be mailed to Mr. Griffith not later than the 30th day after the date of the sale. The

Mr. Gary Griffith
May 31, 2013
Page 2

Aarons will provide Mr. Griffith with an accounting of the proceeds of the sale not later than the 30th day after the date on which Mr. Griffith makes a written request for the accounting.

Mr. Griffith may redeem the property subject to the sale at any time before the property is sold by paying all delinquent rents and all reasonable packing, moving, storage and sale costs.

With kindest regards,

Sincerely,

Michael Noble

CAUSE NO. _CC-13-03871-B_

| | | |
|---|---|---|
| **GARY GRIFFITH AND** | § | **IN THE COUNTY COURT** |
| **STEPHANY GRIFFITH** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **AT LAW NO.** 2 |
| | § | |
| | § | |
| **TODD AARON AND DAWN AARON** | § | |
| | § | |
| **Defendants** | § | **DALLAS COUNTY, TEXAS** |

## TEMPORARY RESTRAINING ORDER

Plaintiffs GARY GRIFFITH AND STEPHANY GRIFFITH have filed a verified Original

Petition; Application For Temporary Restraining Order; Temporary and Permanent Injunctive

Relief; Declaratory Relief; and Application for Expedited Discovery against Defendants Todd Aaron

and Dawn Aaron seeking a temporary restraining order, temporary and permanent injunction against

Defendants Todd Aaron and Dawn Aaron. It appears from the facts set forth in Plaintiffs' Original

Petition that Plaintiffs Gary Griffith and Stephany Griffith are being harmed by the Defendants' acts

and conduct and enforce a landlord's lien under a lease executed by Plaintiff Gary Griffith and cause

EDITH HUGHES (ERIN ABERNATHY)

the sale of their personal property and possessions of ~~Plaintiffs Gary and Stephany Griffith~~ under the

landlord's lien remaining at the premises of Alva Court, Dallas, Texas, on Tuesday, July 2, 2013,

at 10:00 a.m., and by interfering with Plaintiffs Gary and Stephany Griffith's use and possession of

her personal property. Unless restrained without notice, Defendants, in all likelihood, will continue

to commit the foregoing acts and cause irreparable harm to Plaintiffs and sell or auction the

Plaintiffs' personal property and possessions at an auction or sale on July 2, 2013, at 2:00 p.m.,

before notice can be given to Defendants and a hearing is had on Plaintiffs' Application for a

Temporary Injunction; and that if the commission of these acts and conduct by Defendants is not

Temporary Restraining Order

CC – 13 – 03871 – B
CTRO
ORDER – TEMPORARY RESTRAINING ORD
160266

Page 1



restrained immediately, Plaintiff Stephany Griffith will suffer irreparable loss and harm including the loss of her personal property.

It further appears from the Plaintiffs' verified Original Petition; Application For Temporary Restraining Order; Temporary and Permanent Injunctive Relief; Declaratory Relief; and Application for Expedited Discovery, that Plaintiffs have no adequate remedy at law.

IT IS THEREFORE ORDERED that Todd Aaron and Dawn Aaron, Defendants in this cause, their agents, servants, attorneys, employees and representatives be, and hereby are, enjoined and commanded forthwith to desist and refrain from: *EDITH HUGHES & ERIN ABERNATHY*

(1)     taking any actions to sell or dispose of the ~~Plaintiffs~~' personal property under an alleged landlord's lien at an auction or sale on July 2, 2013;

(2)     destroying, damaging, discarding, donating personal property belonging to Plaintiffs.

IT IS FURTHER ORDERED that Defendants Todd Aaron and Dawn Aaron, their agents, servants, representatives, attorney's employees refrain from the above specified acts from the date of entry of this Order until and to the fourteenth (14) day after entry or until further Order of this Court.

IT IS FURTHER ORDERED that pursuant to Plaintiffs' Application for Expedited Discovery is granted and that expedited discovery, including depositions, may be commenced by a party upon three (3) days notice.

IT IS FURTHER ORDERED that the temporary injunction be heard before the Honorable Judge *Sally Montgomery* of the _____ Dallas County Court at Law No. __3__ *on Thursday, July 11, 2013 at 10:30 a.m.*
IT IS ORDERED AND DECREED that this Order shall be immediately binding and effective on Defendants named herein, their agents, servants, representatives, administrators, employees, and attorneys upon receipt of a copy of this Order.

---

The clerk of the above-entitled Court shall forthwith, on the filing by Plaintiffs of the bond hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this order.

This order shall not be effective unless and until the Plaintiffs execute and file with the clerk a bond, in conformity with the law, in the amount of _2, 000_ dollars ($ _2, 000_ ).

SIGNED this _1st_ day of _July_, 2013, at _6:00_ o'clock, _p_.m.

_Sally L Montgomery_
JUDGE PRESIDING